Nebraska, Stephanie Ideas versus Teva Pharmaceuticals, USA, et al. Are you pleased to court? My name is Vince Moschio. I'm here representing Ms. Ideas, the plaintiff's appellant. This appeal presents the question of whether the state of Nebraska will require the Learned Intermediary Doctrine to be applied in cases involving contraceptives, but it's on very specific facts. It's on facts where the plaintiff was in fact given a brochure that did not contain a specific warning about breakage, and she ultimately had an IUD break in bed, become very difficult to remove, and suffered ongoing personal injuries as a result of that. On these facts, we have a situation where the court below has de facto ruled that that brochure given to Ms. Ideas has basically no legal effect, that any omissions made in it are irrelevant, that she can only make her claim through the Learned Intermediary, a doctor that she saw in a clinical setting for a very short period of time. According to her testimony, the only conversation was that she shouldn't become pregnant, or if she became pregnant, she should inform a medical provider, and then basically was referred to the brochure, the very brochure that did not give her the information that she has she would not have used or probably not have used this IUD. These arguments are laid out very well in the brief, in both briefs, and I want to touch on one thing that I think is not laid out very well in the briefs and not discussed with any specificity in the court's order, and that is that the court claims that there's no advertisement here, that there's no evidence that there was advertising to Ms. Ideas, and the only advertisement, per se, that we put into the records was one from five years later. It's the only one we could find. We are claiming, however, that the brochure is basically an advertisement, and what I want to touch on that I don't think is well this isn't an advertisement because it's part and parcel of the FDA-approved materials. The issue here, however, becomes that the court never, although in our brief below, we argued, the briefs below were basically about preemption, and we argued that there was newly acquired information that should have been included in the warnings. Now that would have been included certainly in the doctor information, but if you accept the defendant's argument, it would have been included in the brochure as well. We argued there was no specific regulation regarding the brochure, so it couldn't be preempted. The court below never reached the preemption issue. Instead, it said, we don't have to reach, I don't have to reach the preemption issue because I'm going to rule that she was properly warned and that the learned intermediary doctrine applies and there's no evidence that the doctor would have done anything differently. So there's no reason to reach the preemption issue. The problem with that is it becomes very circular if you then accept and rule that the brochure is not an advertisement because if the brochure was not an advertisement and it was given to her and she relied on the information, then you get into our initial arguments below on preemption, which is that there was newly acquired information that should have been included in all of that. With that argument having never been ruled on, the brochure stands out there as the only thing that was given to her and I believe, maybe it's overstating the case, but I believe for the purposes of this appeal, the way those issues were or were not ruled on, that brochure has to be considered an advertisement. So then we get into the issue of whether or not Nebraska would absolve contraceptives of the learned intermediary doctrine and I will admit to the court and it's clear from the briefing and the case law that that's a minority position. That it is not a non-existent position. It has been adopted in Michigan and in Massachusetts and it was very well laid out in this court in the Hill decision, which we relied on. So why would Nebraska, in your view, what is there from Nebraska case law? We've got the Freeman case, but what else or what in Freeman or elsewhere is telling us or indicating that Nebraska would adopt this, the contraceptive exception to the rule? Well, I'll answer that two ways, Your Honor. First of all, specifically with regard to Nebraska and there's a disagreement amongst the parties and amongst the plaintiffs and the court as to what the import of this is. Nebraska has adopted the learned intermediary doctrine through the restatement of torts 6D, which specifically contains an exception for providing information directly to the plaintiff. Now, I don't think that that exception applies here, but it does show that there was some circumstances, quote, when the patient, a prescription drug or medical device is not reasonably safe due to inadequate instructions or warnings. If reasonable instructions or warnings regarding foreseeable risk of harm are not provided to the patient, when the manufacturer knows or has reason to know that the healthcare providers will not be in a position to reduce the risk of harm in accordance with the instructions or warnings. Now, I'll admit that there's nothing that indicates specifically that Nebraska would adopt it in this case. It's never been presented. We couldn't find any evidence that it's ever been presented. There's no indication it's ever been presented. But we have, number one, the fact that there is a specific exception in the restatement for when you do have to apply or warrant directly to the plaintiff. And that was adopted by the Nebraska legislature. And number two, we have the unique facts of this case. We're not talking here about a general failure to warrant. We're talking about giving a brochure to a young woman who is seeking advice and her looking specifically for that type of warning and not going to be using the IUD if it has that type of an issue. Is that the contraceptive exception, though? Your second point in answering my question, is that directly answering whether Nebraska would recognize the contraceptive exception? In other words, her unique situation, would Nebraska have to accept the contraceptive exception in order to engage in your analysis on your second point? Well, I think what you're asking is, could they do it otherwise? Would there be some other exception? An exception, for instance, where if the brochure is inadequate or if warnings are given on any pharmaceutical drug that are contrary to the truth, or at least omit the truth, that's another way it could be done. But again, we're still forced, the court is still forced to try and foresee what Nebraska would do. Did anyone consider certifying this to the Nebraska Supreme Court? The court did not certify it to the Nebraska Supreme Court. Was that part of the litigation strategy at all? A discussion in the district court? You mean the plaintiff's litigation? Did anyone ask the court to certify the question? No. The question was not certified. It was not asked to be certified. I'm going to, if there's no other questions, reserve my last 45 seconds. Sure, you may. Thank you. Good afternoon. Your Honors, may it please the court, Jeff Peck for Teva Pharmaceuticals, USA, Inc. and Teva Women's Health, LLC. Mr. Mocho cited no authority whatsoever that FDA labeling, which is what the information for patients, or what he calls the brochure, is advertising. It's labeling. And it's labeling that is not promotional at all. What it's meant to do is be reviewed by the physician with the patient. That's on A265 for the record. It's in the prescribing information for the physician to sit down and review it. It's also at A268, another part of the prescribing information. It was given to the patient by the physician at Planned Parenthood. It is not by anyone's definition, and certainly he has shown no authority for the fact that that would ever be classified as an advertisement. It's certainly not direct-to-consumer advertisement, which there is one case in the United States that has found an exception for that, or one state, I should say, which is New Jersey. It's been adopted in no other state. Many other jurisdictions have said that the direct-to-consumer advertising exception is not recognized and will not be recognized in those states. All of those cases are found in pages 18 and 19 of our brief. But again, this isn't even direct-to-consumer advertising. And to the questions about whether or not Nebraska would recognize the exception for contraceptives, first of all, when it adopted 6D, what it focused on was the fact that there's a healthcare provider who is in a position to reduce the risk of harm in accordance with the instructions or warnings, that the warning only need go to the learned intermediary, the physician. And let's look at what exactly it is the physician does with a Paraguard IUD. First of all, as I mentioned, the physician is to review the patient information or brochure with the patient to go over it and talk with it. Secondly, we know that there are warnings in the prescribing information that the district court found to be adequate about embedment and breakage. Those warnings were there for the physician to make a decision whether or not to pass them on to Ms. Zideus, just as they are for every other physician, to make a decision to pass it on to a patient who is getting a Paraguard. Third, there are detailed instructions in the package insert for the physician, A268, about preparing the patient for placement of the Paraguard. There are then detailed instructions that follow about placing the Paraguard in the patient. This is implanted in the uterus. There are then instructions that the patient is supposed to come back after one month to check for whether or not there is proper placement. And finally, in order... Go ahead. I'm sorry. Go ahead. You can finish your finally point. Thank you. Finally, in order for it to be removed, it has to be removed by a physician. So if you want to talk about a situation where there is physician involvement throughout to reduce the risk, it is patently obvious it is with this situation. Thank you, Your Honor. I appreciate that. And that seems to be sort of a slightly different argument than just sort of a general contraceptive. Is your position that there are certain types of contraceptives, at a minimum, that require so much medical intervention and doctor-patient discussion that they would fall under the learned intermediary doctrine? For example, are you comparing it to the pill, for example? I'm not making any comparison, Your Honor. I think any oral contraceptive, and I think this is where the weight of the authority is, or any contraceptive, including oral contraceptives, should fall under the learned intermediary doctrine because they have to be prescribed by a physician. They involve medical judgment. What about the pushback that when you're getting a birth control pill, you're not going in for treatment for some kind of a disorder that the doctor diagnoses you with, and then you determine what type of medical treatment you need to get at that particular diagnosis. This is something that the woman is coming in of her own volition to say, this is what I would like for my own health care. That is sort of a different relationship or a different decision-making process. I would disagree, Your Honor. There are all kinds of things that we do going to physicians for to help maintain and prevent certain things from happening that we don't want to happen that may affect our health. Ms. Ideas had two unplanned pregnancies. So whether she went in to ask for an oral contraceptive or an IUD, it doesn't matter in terms of the fact that the physician has to make a judgment as to whether an oral contraceptive is appropriate for that patient. The patient just can't get it. There are many risks associated with oral contraceptives, including thromboembolic risk. That's why all of these courts that we have cited in our brief, and all of the courts that the district courts cited, have said no. The learned intermediary doctrine applies. The only jurisdiction that really has said that it does not to oral contraceptives is Massachusetts. That's it. Michigan really hasn't said that. There are two district court cases up there that have said that they would not apply. There's a third called Reeves that followed them that said the learned intermediary doctrine would apply to oral contraceptives, but the Michigan Supreme Court never has ruled on it because they said it was an issue for the legislature. It's never frankly come up in Michigan because Michigan has a statute that says that if you have an FDA approved drug, you can't sue a pharmaceutical company. Let's focus back to Nebraska a bit. It seems like there's just not a lot there. What's your best evidence of what Nebraska would do? We've got Freeman and then very little else. It's the same question to you as I ask opposing counsel. Where else can we look for what Nebraska would do? Are we really relying on basically the majority of the jurisdictions? Is that kind of where we fall? How do you respond? I think you can look right to what the Nebraska Supreme Court said in Freeman in adopting 6D. It said that if it's a situation where the physician is in a position to reduce the risk of harm in accordance with the instructions or warnings, as any physician is in a prescribing situation like this, there's no reason to differentiate any kind of contraceptive from the prescribing of other drugs. In every one of those situations, the physician is in the position to reduce the risk of harm in accordance with the instructions or warnings. What about the advertising exception, the direct advertising exception? The direct advertising, there's only one jurisdiction that has adopted that, and that is the New Jersey and New Jersey in the Perez case. The Freeman case cites that case. It cites it for the general view of the learned intermediary doctrine. It does not in any way say that it's adopting the direct to consumer advertising exception. I don't mean to read too much into it, but there's a lot of cases you could cite, or probably several you could cite for. I'm searching for anything here to get an indication of what Nebraska might do. Well, I think, yeah, I guess my point is, Your Honor, you have it. You have it with 6D. It has talked about the situations where it has adopted the learned intermediary doctrine, and it is talking about the only time that it would not put it in play is if the physician is not in a position to reduce the risk of harm. There is nothing to suggest that the Nebraska Supreme Court would adopt the direct to consumer advertising, particularly when it said we want to be like the majority of the jurisdictions. That was part of the determination in Freeman. We're going along with the majority. Well, if you're doing that, the Perez decision has been heavily criticized, including recently by the Texas Supreme Court in the Senate court case. And the only exception that really comes up in these circumstances is the vaccine situation, which is the Reyes case that was cited in Hill. But that has no application here. This is not mass immunization or anything like that. The Freeman decision is very clear, and I submit supports that there would not be an exception of any sort that would be applicable here, Your Honor. I see my time is up. Thank you. I ask that you affirm. Thank you for your argument. Ready for a rebuttal? I'm waiting for the clock. There we go. Very quickly with regard to just a couple things. With regard to this idea that the majority of jurisdictions, I admit that it's a minority position, but it's not as much a minority position as it appears from the string site. Because if you look at a lot of those cases, those are cases that apply to learned intermediary in a contraceptive context without ever having to face the argument. No one ever argued that it shouldn't apply. So it's simply a case where learned intermediary was applied because it's always applied, and no one said it shouldn't be. With regard to 6D, I believe 6D shows that the legislature is considering exceptions. I don't think that exception applies here, but they're not going to make an exhaustive list of those exceptions unless they're actually presented with a reason to make a specific exception, which this specific exception hasn't been presented to either the courts or the legislature in Nebraska. With regard to the best evidence, I think both parties have an issue of not being able to point to a lot, but I think that Freeman shows that there is an indication that it's a flexible concept, that it's not as set in stone as defendants want it to be, and I think it's unfortunately vague enough that we can both read things into it. Judge Kelly, could I ask one additional question? Certainly. So I wanted to ask you about opposing counsel's argument that this warning is a warning. It is not an advertisement. And frankly, that's sort of my reading too, but I want to, before I make that judgment call, because you started out your argument talking about it, I want to give you a chance to respond. Yes. I think whether or not we call it per se an advertisement, first of all, is not that important. What it is is it's a direct-to-consumer warning, and the question then becomes, does that warning have to be accurate? And the secondary question, of course, that the defendants want to push is whether or not it's regulated by the FDA and therefore it said everything that it had to say and it couldn't have said any more. If it's a warning, though, I just want to – sorry to follow up, but if it's a warning, doesn't that swallow the learned intermediary rule? Because the whole point of the learned intermediary rule is that the warnings could be not deficient, but the warning could omit something and then the prescriber information could include it. And so if you admit that it's a warning, isn't it game over for the warning or for the advertisement exception? Well, no, I'm not admitting that it's a warning because, unfortunately, we've never had a decision one way or another as to what it is because it kind of would have been decided under the other part of the arguments that were presented below but never was by the court. So I'm not admitting it's a warning. What I'm saying is that I believe, and I said this, for the purpose of this case, for this appeal, the way it developed below, it has to be considered an advertisement. But my secondary opinion would be even if you said it's a warning, while that might get you out of the argument that we're having today, it places the onus back on the district court to have ruled on my other argument, which was that all of those warnings had to be updated based on newly acquired information, which the court never got to and never ruled on. So you can't say, okay, it's not an advertisement, so you lose on this argument, but it is a warning, so you lose on an argument that the district court never ruled on. And that's basically the position we'd be in. So I suppose at a minimum, if you're going to say it's a warning, you have to remand it for a decision as to whether or not that warning really preempted or that warning needed to be updated based on all the evidence we put in of newly acquired breakage. There were many, many incidents of breakage that were all put before the district court to support the argument that manufacturer needed to change those warnings. That's all I have. Thank you both. We appreciate your arguments, and we appreciate your willingness to appear by video. We will take the matter under advisement.